ZEICHNER ELLMAN & KRAUSE LLP
Philip S. Rosen
Robert Guttmann
575 Lexington Avenue
New York, New York 10022
(212) 223-0400
Attorneys for Defendant Ultravolt, Inc.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAY JOHNSON, <br><br> Plaintiff, <br><br> v. <br><br> ULTRAVOLT, INC., <br><br> Defendant. | Civil Action No. CV 12-1476 (DRH) (AKT) |

## MEMORANDUM OF LAW OF DEFENDANT ULTRAVOLT, INC. IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

ZEICHNER ELLMAN & KRAUSE LLP
575 Lexington Avenue
New York, New York 10022
Telephone: (212) 223-0400

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT .................................................................................... 1

STATEMENT OF UNDISPUTED FACTS ................................................................... 2

PROCEDURAL HISTORY ............................................................................................ 2

ARGUMENT .................................................................................................................. 3

POINT I      STANDARD FOR SUMMARY JUDGMENT ............................................. 3

POINT II     ULTRAVOLT HAS ESTABLISHED ITS *PRIMA FACIE*
RIGHT TO SUMMARY JUDGMENT ON COUNT IV OF
THE COMPLAINT FOR 2011 FOURTH QUARTER
COMMISSIONS AND AN ANNUAL 2011 BONUS .................................. 4

CONCLUSION ............................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242, 106 S.Ct. 2505 (1986)..................................................................................3

D'Amico v. City of New York,
    132 F. 3d 145 (2d Cir. 1998 ), cert. denied, 524 U.S. 911 (1998)............................................10

Jeffreys v. City of New York,
    426 F.3d 549 (2nd Cir. 2005) ..................................................................................................3

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986)..............................................................................................................10

Tartar v. Elite Gold Inc.,
    2002 WL 2031605 (S.D.N.Y. 2002)........................................................................................8

**STATE CASES**

Pimpinello v. Swift & Co. Inc.,
    253 N.Y. 159, 170 N.E. 530 (1930).....................................................................................7, 8

**FEDERAL STATUTES**

Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* .......................................................................1

**STATE STATUTES**

New York Labor Law § 191 .......................................................................................................1, 4

New York Labor Law § 198 ....................................................................................................1, 2, 4

**RULES**

Fed.R.Civ.P. 56(c) ...........................................................................................................................3

**PRELIMINARY STATEMENT**

Plaintiff Jay Johnson ("Plaintiff" or "Johnson") commenced this action alleging various claims related to his relatively brief employment with defendant Ultravolt, Inc. ("Ultravolt"). The claims essentially fall into two categories: (i) that Ultravolt did not comply with the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and relevant New York State statutes by failing to pay Johnson applicable overtime wages due to a misclassification of Johnson's employment status and (ii) that Plaintiff is owed monies from Ultravolt pursuant to New York Labor Law §§ 191 and 198 ("NYLL") for allegedly unpaid or underpaid commissions and/or bonuses earned during 2010-2011 in the maximum amount of $25,000. The latter claim, for commissions, in averred by Johnson in Count IV of the complaint.

In fact, of the $25,000 alleged in Count IV of the complaint, Plaintiff's Supplemental Rule 26 Disclosures (i.e., last page) make clear that $20,310 of that amount (plus reasonable counsel fees, costs and disbursements), pertain to commissions/bonuses for fourth quarter 2011, and an annual bonus for 2011. As detailed below, the relief requested in Count IV concerning 2011 fourth quarter commissions and an annual 2011 bonus is in direct contrivance of the contractual agreements between Plaintiff and Ultravolt, and should be dismissed with prejudice.

## STATEMENT OF UNDISPUTED FACTS

The facts related to this motion are set forth in the complaint and the accompanying declarations of Thomas Pawluk and Philip S. Rosen, Esq. To summarize:

(i) Plaintiff was employed as a Sales Applications Engineer by Ultravolt from on or about February 22, 2010 to on or about December 16, 2011;

(ii) Throughout his employment with Ultravolt, Plaintiff signed certain confidential memoranda (the "Memoranda") providing, among other things, that he was eligible for commissions and bonuses only to the extent he was employed by Ultravolt at the time of payment;

(iii) Pursuant to the Memoranda signed by Plaintiff, quarterly commissions would be paid quarterly, typically in the first month for the previous quarter;

(iv) Pursuant to the Memoranda signed by Plaintiff, the annual bonus would be paid annually, typically in the first quarter (March) for the previous year;

(v) Plaintiff resigned his position at Ultravolt on or about December 16, 2011.

## PROCEDURAL HISTORY

Plaintiff commenced this action by filing a complaint on March 26, 2012. See Rosen Declaration, Exhibit A. Ultravolt filed an answer to the complaint on May 21, 2012. Id., Exhibit B. On April 30, 2013, the Court issued an order granting Ultravolt permission to make the instant motion for summary judgment. See, Docket Entry for April 30, 2013.

## ARGUMENT

## POINT I

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where, as here, the pleadings and evidence "show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A fact is 'material' for these purposes when it might affect the outcome of the suit under the governing law. An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Jeffreys v. City of New York, 426 F.3d 549, 553 (2nd Cir. 2005) citing Fed.R.Civ.P. 56(c) (quotations and citations omitted).

While a district court must draw all reasonable inferences in favor of the nonmoving party, "the mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986). "To defeat summary judgment, therefore, nonmoving parties must do more than simply show there is some metaphysical doubt as to the material facts, and they may not rely on conclusory allegations or unsubstantiated speculation. At the summary judgment stage, a nonmoving party must offer some hard evidence to show that its version of events is not wholly fanciful." Jeffreys, 426 F.3d at 554 (citations and quotations omitted).

3

As will be demonstrated below, clear documentary evidence bars Plaintiff's claim in Count IV of his complaint for 2011 fourth quarter commissions and an annual 2011 bonus and, therefore, summary judgment should be entered in Ultravolt's favor dismissing these claims.

## POINT II

### ULTRAVOLT HAS ESTABLISHED ITS *PRIMA FACIE* RIGHT TO SUMMARY JUDGMENT ON COUNT IV OF THE COMPLAINT FOR 2011 FOURTH QUARTER COMMISSIONS AND AN ANNUAL 2011 BONUS

Count IV of the complaint is presumptively made under New York Labor Law §§ 191 and 198 and seeks damages for allegedly unpaid commissions for calendar years 2010 and 2011. Insofar as the 2011 fourth quarter commissions and the annual 2011[1] bonus are concerned, they are barred by documentary evidence and summary judgment should be entered in Ultravolt's favor dismissing these claims.

During the course of discovery, Ultravolt produced the Memoranda which governed the terms of bonus/commissions for certain Ultravolt employees, including Plaintiff for 2010 and 2011. Plaintiff executed each of the Memoranda, thus indicating his agreement to their terms. In point of fact, Plaintiff testified that it was his standard operating procedure to read the contents of any document before signing. (See Johnson Deposition Testimony, March 20, 2013 at p. 21, annexed as Exhibit C to Rosen Declaration). The Memoranda are clear that commissions and/or bonuses are paid out to

---

[1] Ultravolt disputes that Plaintiff is entitled to any commissions for 2010, but that claim is not the subject of Ultravolt's present motion. Ultravolt reserves the right to seek dismissal of Plaintiff's claim for 2010 commissions at the time of trial.

4

employees only if they are employed with Ultravolt at the time of payment. (See Pawluk Declaration ¶ 3, Exh. 1). In point of fact, the first paragraph of each Memoranda provides verbatim that "[E]ligibility for the plan is based on employment at the time of payment." (See Pawluk Declaration ¶ 3, Exh. 1). Concerning the timing of the quarterly commissions, the Memoranda provides verbatim:

> This would be paid quarterly, typically in the first month for the previous quarter. . . . (See Pawluk Declaration ¶ 4, Exh. 1).

For the annual bonus, the Memoranda provides verbatim:

> This would be paid annually, typically in the first quarter (March) for the previous year. . . .
>
> (See Pawluk Declaration ¶ 4, Exh. 1).

Johnson's testimony concerning the Memoranda,[2] makes it abundantly clear that he was well aware of the criteria by which bonuses/commissions were paid by Ultravolt.

> Q. Page 13, second to last paragraph, "this would be paid quarterly, typically in the first month for the previous quarter, and is reviewed and may be renewed on a year to year basis," do you see that?
>
> A. Yes.
>
> Q. So if you were to have earned a 2011 bonus, when would that have been payable?
>
> A. Don't know.
>
> Q. Would it be payable first quarter 2012?

---

[2] The Memoranda are annexed to the Pawluk Declaration as composite Exhibit 1.

5

A. They always delayed payments. So, what's the definition of "typical"? It was ambiguous and -- I can only question when it would have been paid.

Q. Was it ever paid during the quarter that you earned it, so if you earned it third quarter would it be pay third quarter?

A. No.

Q. Typically the next quarter?

A. Typically.

Q. Well, when you say "typically," are you suggesting that it might have even been paid a quarter after that?

A. I'm suggesting that it could have been the first day of the next quarter or the ninetieth day of the next quarter, it was ambiguous.

Q. Is it fair it was sometime in the next quarter?

A. Yes.

<u>Johnson Deposition Testimony</u>, March 20, 2013 at pp. 105-106 (Relevant sections of Johnson's deposition transcript are attached as Exhibit C to Rosen Declaration.)

In addition to the Memoranda specifying the timing of commission/bonus payments, the Memoranda also explicitly required that in order to receive such payments the employee (<u>i.e.</u>, Johnson) must be employed by Ultravolt at the time of payment. This condition was acknowledged by Johnson's signature to the Memoranda, as well as by his deposition testimony:

.... MR. ROSEN: For the record D-16 is a two-page document bearing bates stamp plaintiff's 16 and 17. It's a confidential memo to sales applications engineers from James Morrison and Scott Wilson, date revised February 1, 2011, re: compensation plan for CYE11 sales AEs.

Q. Sir, would you look at page 17 and you'll see AE acceptance, is that your signature (handing)?

A. Yes.

6

> Q. And you'll see the first paragraph on page 16 the sentence says, "eligibility for the plan is based on employment at the time of payment," do you see that?
>
> A. Yes.
>
> Q. The second to last paragraph on page 17, "this would be paid quarterly, typically in the first month for the previous quarter, and is reviewed and may be renewed on a year to year basis," do you see that?
>
> A. Yes.

Johnson Deposition Testimony, March 20, 2013 at pp. 106-107 (Exhibit C to Rosen Declaration).

The Complaint alleges in ¶ 5, and Ultravolt does not dispute, that Plaintiff's employment with Ultravolt ended on or about December 16, 2011. Because Johnson was not employed by Ultravolt in the first quarter of 2012, during which time the 2011 fourth quarter commissions and the annual 2011 bonus were payable, Plaintiff was not entitled to any such bonus/commission for this time frame.[3] As the New York Court of Appeals held in Pimpinello v. Swift & Co. Inc., 253 N.Y. 159, 170 N.E. 530 (1930),

> The signer of a deed or other instrument ... is conclusively bound thereby. That his mind never gave assent to the terms expressed is not material. If the signer could read the instrument, not to have read it was gross negligence; if he could not read it, not to procure it to be read was equally negligent; in either case the writing binds him. (Internal citations omitted.)

---

[3] As set forth on the last page of Plaintiff's Supplemental Rule 26 Disclosures (attached as Exhibit D to Rosen Declaration), Plaintiff seeks recovery of $20,310 plus counsel fees and costs for fourth quarter 2011 commissions, and the 2011 annual bonus.

7

Pimpinello at 162. See also, Tartar v. Elite Gold Inc., 2002 WL 2031605 *3 (S.D.N.Y. 2002). Plaintiff's sworn deposition testimony that he signed the Memoranda belies any claim that he is not bound by their terms.

In addition, Plaintiff deposed Scott Wilson of Ultravolt and addressed with Mr. Wilson, among other things, Johnson's claims for the 2011 fourth quarter commissions and the 2011 annual bonus:

> Q   What was the reason he [Johnson] was not paid the [2011 fourth quarter] bounty?[4]
>
> A   The bounty memo illustrates that you need to be employed at the time of payment in order to receive the bounty. They were typically paid in the six weeks following the end of a quarter. They could be calculated for the previous quarter. The memo illustrates you have to be employed at the time the bonus is paid in order to receive it.
>
> Q   That quarter ended December 31st?
>
> A   That's correct.
>
> Q   The bounties are usually paid within six weeks of the quarter ending?
>
> A   Yes.
>
> * * * *
>
> Q   Did Jay Johnson ever ask to be paid this fourth quarter bounty?
>
> A   No. Jay was gone before this bounty was calculated.
>
> * * * *

---

[4] Pursuant to the Memoranda, bounties are synonymous with bonuses/commissions.

8

Q   Jay Johnson received a year end bonus for the year 2010?

A   That's correct.

Q   He received that sometime in 2011?

A   Typically in March, somewhere in the March-April window.

Q   Is that when the year end bonus is paid –

A   Yes.

* * * *

Q   According to your policies if someone quits in February, that person is not going to receive the yearend bonus even though that person worked the entire previous year?

A   That's correct. It's how the memo is written.

Q   Are those memos always presented to the employees?

A   Yes, and signed and returned and filed with HR.

Q   If the employee wants to leave their position, they should wait until they actually get the bonus?

A   Yes. It was considered illogical, Jay's departure. The timing and methodology was considered illogical by the staff. He was clearly walking away from any bonus he felt he had earned.

Wilson Deposition Testimony, March 13, 2013 at pp. 30-31, 33-34 (Exhibit E to Rosen Declaration).

Based upon the evidentiary record, the court should enter summary judgment in Ultravolt's favor and dismiss with prejudice Johnson's claims for the 2011

9

fourth quarter commissions and the 2011 annual bonus. See, D'Amico v. City of New York, 132 F. 3d 145, 149 (2d Cir. 1998 ), cert. denied, 524 U.S. 911 (1998) (summary judgment is appropriate where there is no genuine issue of material fact). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal citations and quotation omitted).

## CONCLUSION

For the foregoing reasons, Ultravolt respectfully requests that the Court enter an order: (i) granting Ultravolt summary judgment pursuant to Fed. R. Civ. P. 56 dismissing Count IV of the complaint as it relates to the fourth quarter 2011 commissions and the 2011 annual bonus, and (ii) granting such other and further relief to Ultravolt as the Court deems just and proper.

Dated:  New York, New York
        June 12, 2013

ZEICHNER ELLMAN & KRAUSE LLP

By: _____
Philip S. Rosen
Robert Guttmann
Attorneys for Defendant Ultravolt, Inc.
575 Lexington Avenue
New York, New York 10022
(212) 223-0400